## COMMONWEALTH *vs.* RICHARD D. ODOARDI.

Norfolk. December 4, 1985. — March 6, 1986.

Present: WILKINS, LIACOS, ABRAMS, NOLAN, & LYNCH, JJ.

*Practice, Criminal,* Probation. *Due Process of Law,* Probation revocation, Notice. *Notice. Constitutional Law,* Double jeopardy.

An order of a Superior Court judge revoking a defendant's probation and imposing a sentence of incarceration predicated upon the defendant's being convicted on a charge of robbery, for which he had also received a sentence of incarceration, did not violate his constitutional right not to be put in jeopardy twice for the same offense. [30]

A notice received by a defendant which instructed him to appear in court on a certain date for a hearing on the charge that he had violated the terms of his probation, and which designated the alleged violations of his probation, was not constitutionally defective by reason of its failure to indicate whether the proceeding was to be a preliminary, or a final, revocation hearing where, at the hearing, the judge did nothing more than appoint counsel and continue the case to a later date, where there was no confusion that the hearing scheduled for the later date was a final hearing, and where it did not appear that the defendant was in any way prejudiced by the type of notice given. [30-32]

A defendant who was incarcerated at the time of his probation revocation proceeding pursuant to a conviction on other charges was not entitled to a preliminary hearing to determine whether there was probable cause to believe that he had committed a violation of his probation. [32-34]

Where there was no dispute at a defendant's final surrender hearing that there was a sufficient basis for revocation of his probation, the judge did not abuse his discretion in limiting the defendant's cross-examination of the probation officer who presented the Commonwealth's case against him. [34]

A probation revocation proceeding initiated before a judge in the Superior Court after the scheduled termination of the defendant's probation on June 24, 1984, was reasonable in light of the fact that the criminal conviction on which revocation was based occurred in May, 1984, where the defendant pointed to no fact of record to indicate either that the Commonwealth failed to act diligently, or that he was prejudiced thereby, and where the record did not reveal that the defendant raised the issue of unreasonable delay before the Superior Court judge. [35-37]

INDICTMENT found and returned in the Superior Court on March 14, 1977.

A proceeding to terminate probation was heard by *Roger J. Donahue,* J.

The Supreme Judicial Court on its own initiative transferred the case from the Appeals Court.

*Richard Ciavola* for the defendant.

*Peter W. Agnes, Jr.,* Assistant District Attorney, for the Commonwealth.

LIACOS, J. The defendant, Richard D. Odoardi, challenges the validity of an order by a judge of the Superior Court in Norfolk County revoking his probation and imposing a sentence of incarceration. After the appeal was docketed in the Appeals Court, we transferred the case here on our own motion. We affirm.

In December, 1977, the defendant pleaded guilty in the Superior Court in Norfolk County to robbery while armed. At the time of the plea, he was serving time on a prior sentence. He was sentenced to five years' probation (the Norfolk County probation) on and after his release from the Massachusetts Correctional Institution (M.C.I.) at Concord. The probationary period was scheduled to expire June 24, 1984. In January, 1982, the defendant was convicted of various felonies in Suffolk County and was sentenced to concurrent terms of incarceration, later reduced to three years' probation (the Suffolk County probation). In February, 1983, the defendant was indicted in Essex County for robbery and breaking and entering with intent to commit a felony. He was convicted of the robbery charge in May, 1984, and was sentenced to six to ten years at M.C.I., Cedar Junction.[1] On July 19, 1984, as a result of the Essex County conviction, the defendant's Suffolk County probation was revoked by a judge of the Superior Court sitting in that county. He was then sentenced to two and one-half to three years at M.C.I., Cedar Junction, on the Suffolk County convictions, to be served concurrently with the Essex County sentence. On December 20, 1984, after hearing, the defend-

[1] This sentence was revised subsequently to five to ten years at M.C.I., Cedar Junction.

ant's Norfolk County probation also was revoked, and the defendant was sentenced to five to ten years at M.C.I., Cedar Junction, to be served on and after completion of his Essex County sentence. It is this last probation revocation which the defendant challenges.

1. *Double jeopardy.* The defendant states that the sentence of incarceration imposed on revocation of his Norfolk County probation is essentially the third punishment he received for his robbery conviction in Essex County. He contends that this action violated his constitutional right not to be put in jeopardy twice for the same offense. He points to the five to ten year sentence of incarceration which he received as a direct result of the Essex County conviction, and the concurrent two and one-half to three year sentences imposed when his Suffolk County probation was revoked, as instances of prior punishment for the same offense. The argument is without merit.[2]

"[T]here is no double jeopardy protection against revocation of probation and the imposition of imprisonment." *United States* v. *DiFrancesco*, 449 U.S. 117, 137 (1980). This is true whether revocation is predicated on the probationer's conviction of a criminal offense or merely on a finding that he has "abused the opportunity given him to avoid incarceration." *Rubera* v. *Commonwealth*, 371 Mass. 177, 181 (1976), quoting *Roberson* v. *Connecticut*, 501 F.2d 305, 308 (2d Cir. 1974). In neither case do we view the imprisonment as punishment for the act or acts that prompted revocation of probation. Rather, the probationer is being punished for the underlying offense for which a probationary sentence originally was imposed. Thus, in the instant case the defendant has been sentenced but once to a term of incarceration for each of his convictions in Essex, Suffolk, and Norfolk Counties. He has no legitimate double jeopardy claim.

2. *Due process.* The defendant argues also that the procedures employed in revoking his Norfolk County probation vio-

---

[2] It is arguable that defense counsel conceded, at the probation revocation hearing on December 20, 1984, that the judge was not barred by the double jeopardy clause from revoking the defendant's Norfolk County probation. Nevertheless, we consider this argument.

lated, in various respects, his right to due process of law as articulated in *Gagnon* v. *Scarpelli*, 411 U.S. 778 (1973), and *Morrissey* v. *Brewer*, 408 U.S. 471 (1972). We consider each of the alleged due process transgressions in turn.

a. *Notice.* Prior to the revocation of his Norfolk County probation, the defendant received what was termed a "Notice of Surrender and Hearing(s) for Alleged Violation(s) of Probation" instructing him to appear in court on December 13, 1984, for a hearing on the charge that he violated the terms of his probation. The two Essex County indictments were designated as the alleged violations. The defendant appeared in court on December 13, 1984, but the hearing was continued until December 20, 1984, at which time probation was revoked. The defendant maintains that the notice he received was constitutionally defective because it failed to indicate whether the proceeding on December 13 was to be a preliminary, or a final, revocation hearing. We do not agree.

In *Morrissey* v. *Brewer, supra* at 485-489, the United States Supreme Court defined the minimum due process that must be afforded a parolee prior to revocation of his parole, stating that both a preliminary and a final revocation hearing are required. With respect to the preliminary hearing, the Court stated that the parolee should be given notice specifying that the hearing will take place and that its purpose is to determine whether there is probable cause to believe that he has committed a parole violation. In addition, the notice must identify any alleged violations of the conditions of parole. *Id.* at 486-487. As to notice of the final revocation hearing, the Court stated only that written notice of any claimed violations of parole is required. *Id.* at 489. In *Gagnon* v. *Scarpelli, supra* at 782, the Court held that "a probationer, like a parolee, is entitled to a preliminary and a final revocation hearing, under the conditions specified in *Morrissey* v. *Brewer, supra.*" There is no further discussion in either *Morrissey* or *Gagnon* regarding the content of the notice of revocation proceedings that must be sent to the parolee or probationer. We note, however, that, in another context, the Court stated that notice, "to comply with due process requirements, must be given sufficiently in

advance of scheduled court proceedings so that reasonable opportunity to prepare will be afforded." *In re Gault,* 387 U.S. 1, 33 (1967).

While the notice given the defendant was unclear as to whether a preliminary or a final revocation hearing was to be held on December 13, there was no confusion that the December 20 hearing was a final hearing, and the record reveals no objection by the defendant to the adequacy of the notice. It does not appear that the defendant was in any way prejudiced by the type of notice given. At the hearing on December 13, the judge did nothing more than appoint counsel and continue the case until December 20. At the proceeding on the latter date, defense counsel stated that he assumed that it was to be a final, rather than a preliminary, revocation hearing. There was no element of surprise involved. It is therefore difficult to perceive how the probation authorities' failure to specify in the notice what type of hearing was to convene on December 13 could have affected the defendant adversely. We conclude that the notice did not fail of its essential purpose.[3] See *O'Brien* v. *Director of the Div. of Employment Sec.,* 393 Mass. 482, 485 (1984) (rejecting plaintiff's claim that the notice of hearing before the Division of Employment Security failed to inform him adequately of one of the issues to be addressed, where plaintiff never objected to consideration of that issue, did not express surprise that it was being considered, and did not request continuance or additional time to provide evidence).

b. *Right to a preliminary hearing.* The defendant argues next that he was denied his right to a preliminary probable cause hearing. We agree that neither of the two proceedings on December 13 and December 20 may be characterized as a preliminary hearing,[4] but conclude that under the circumstances of the instant case no such hearing was required.

---

, [3] Clearly it is preferable that the probation authorities indicate on the face of the notice whether a revocation proceeding is to be a preliminary or a final hearing. It does not follow, however, that failure to do so necessarily rises to the level of a due process violation, particularly where the defendant is not prejudiced thereby.

[4] In our view, the hearing on December 13 was a final surrender proceeding which was continued until December 20. Therefore, we do not reach the

In *Gagnon* v. *Scarpelli, supra* at 781-782, the Court established that a probationer is entitled to a preliminary hearing at the time of his arrest and detention to determine whether there is probable cause to believe that he has committed a violation of his probation. This court recognized in *Fay* v. *Commonwealth*, 379 Mass. 498, 504 (1980), that the "purpose of the preliminary hearing is to protect the rights of the parolee or probationer who, being at liberty, is taken into custody for alleged violation of his parole or probation conditions, and detained pending a final revocation hearing." Thus, in *Fay*, where the defendant had remained at liberty awaiting a determination on the merits whether she had violated the conditions of her probation, we held that she was not entitled to a preliminary hearing. We reasoned that the initial probable cause inquiry was unnecessary because the defendant "suffered no detention or loss of liberty for . . . the violation of her probation until after the adjudication that she was guilty thereof." *Id.*

We think the rationale for requiring a preliminary hearing inapplicable in the case at bar where the defendant was incarcerated at the time of the probation revocation proceeding pursuant to a conviction on other charges.[5] *United States* v. *Tucker*, 524 F.2d 77, 78 (5th Cir. 1975) (rationale for requiring preliminary hearing does not apply where probationer is incarcerated at the time of attempted revocation). See *Moody* v. *Daggett*, 429 U.S. 78, 86 n.7 (1976) (parolee not entitled to preliminary hearing when imprisoned at time of revocation proceedings for crime committed while on parole). Here, as in *Fay*, the defendant was not deprived, by reason of any alleged probation

---

defendant's alternative argument that, if we determine that there was a preliminary hearing on December 13, followed by a final hearing on December 20, his due process rights were violated because the same judge could not preside over both hearings without his consent.

[5] Our reasoning suggests, as well, that where a probationer is in custody awaiting prosecution on other charges he is not entitled to a preliminary hearing prior to final revocation of his probation. See *United States* v. *Diaz-Burgos*, 601 F.2d 983, 984-985 (9th Cir. 1979). If, of course, he is released on bail before the final revocation hearing is to be held, and the authorities wish to keep him in custody on the basis of alleged probation violations, a probable cause hearing then would be required.

violations, of his liberty prior to final revocation of his probation. A probable cause hearing would have served no purpose in this instance.[6]

c. *Right to cross-examine adverse witnesses.* Joan Hall, a Norfolk County probation officer, presented the Commonwealth's case against the defendant at his final surrender hearing on December 20, and recommended to the court that his probation be revoked and an "on-and-after" sentence imposed. Defense counsel then attempted to question Hall but was precluded from doing so by the judge after his first two questions were allowed. The defendant argues that the judge's action deprived him of his right under *Gagnon* v. *Scarpelli,* 411 U.S. 778 (1973), to cross-examine adverse witnesses.

There was no dispute in the instant case that there was a sufficient basis for revocation of the defendant's probation. As defense counsel admitted at the hearing, the defendant's Essex County conviction was a matter of record. It is for this reason apparently that the judge refused to allow any protracted questioning of Hall. We do not interpret *Gagnon* to mean that a judge is without discretion to limit or curtail irrelevant or redundant inquiries. The judge did not limit the defendant's opportunity to call witnesses or to present evidence in mitigation of his probation violations.[7] There was no error. Cf. *United States* v. *Diaz-Burgos,* 601 F.2d 983 (9th Cir. 1979) (judge's refusal in final probation revocation hearing to allow probationer to prove relevant mitigating facts was abuse of discretion and violated probationer's constitutional right to due process).

---

[6] We need not decide whether a preliminary hearing is required to establish probable cause with respect to violation of probation where a probationer is at liberty, but, as here, the alleged violation of probation is based on an indictment (and conviction) of another crime. See *Rubera* v. *Commonwealth,* 371 Mass. 177, 181-182 (1976), quoting *Roberson* v. *Connecticut,* 501 F.2d 305, 308 (2d Cir. 1974).

[7] In the course of arguing that the judge should not revoke the defendant's probation and that, if he did, a sentence of incarceration concurrent with the defendant's Essex County sentence should be imposed, defense counsel urged the judge to consider that the defendant already had had his Suffolk County probation revoked by reason of the Essex County conviction; that he was a decorated Vietnam veteran who had suffered from "Vietnam syndrome"

d. *Delay·in holding revocation hearing*. In *Commonwealth v. Sawicki*, 369 Mass. 377, 380 (1975), we stated: "[T]ermination of probation, or rather of the court's power over the probationer, is not automatic when the stated period of probation has run even when no steps leading to revocation of probation have been previously taken. On the contrary, final action, in the form of an order signalling the end of the court's supervision of the probationer, is required to terminate probation, and this may occur after the close of the probation period originally set. . . . [T]he order actually entered may take due account of infractions that occurred during the period of probation and for which the probationer has not previously been called to account." (Footnote omitted.) We stated in dictum, however, that a court should exercise its power to extend or to revoke probation within a reasonable time after expiration of the original probationary period. *Id*. at 384-385. What constitutes a reasonable time was left to a case-by-case appraisal. *Id*. at 385.

In the instant case, the defendant's Norfolk County probation was revoked on December 20, 1984. This was twenty-two months after he was indicted, on February 16, 1983, in Essex County, and nearly six months after his Norfolk County probation was due to expire on June 24, 1984. The defendant maintains that under *Sawicki* this delay was unreasonable, and that it was prejudicial to his rights.

Although the Commonwealth might have commenced revocation proceedings immediately after the Essex County indictments were returned, see *Rubera* v. *Commonwealth*, 371 Mass. 177, 180-181 (1976), it was not required to do so. While we have not embraced the proposals of the American Bar Association in this regard, it is relevant to note that it has recommended that, where revocation is based on the commission of subsequent criminal acts by the probationer, revocation proceedings not be initiated until disposition at the trial of the new criminal charge. *Id*. at 182, 184 & n.3, citing the ABA Project on Standards for Criminal Justice, Standards Relating

on his return to the United States; and that he had a wife and young child to care for.

to Probation § 5.3, at 62-63 (Approved Draft 1970). The practice of postponing revocation proceedings is said to serve various purposes including: permitting the probationer to clear himself of the new criminal charges, thus, likely enabling him to avoid revocation of probation; avoiding the need to have the probationer testify at the revocation hearing as to matters that may prejudice him in the criminal case; and avoiding hampering the probationer's ability to defend himself on the criminal charges. *United States* v. *Sackinger,* 537 F. Supp. 1245, 1250 (W.D.N.Y. 1982), aff'd, 704 F.2d 29 (2d Cir. 1983).

It appears to us that the defendant has no cause to complain about the Commonwealth's failure to initiate revocation proceedings during the period between the defendant's indictment in Essex County in February, 1983, and his convictions on those charges in May, 1984, inasmuch as the delay could have inured only to the defendant's benefit.

We focus instead on whether the delay in commencing revocation proceedings after the scheduled termination date of the defendant's probation on June 24, 1984, was reasonable in light of the fact that the criminal conviction on which revocation was based occurred in May, 1984. See *Commonwealth* v. *Ward,* 15 Mass. App. Ct. 388, 391-392 (1983) (judge's power to extend or revoke defendant's probation after expiration of its original term depends on whether both probation officer and judge acted with reasonable promptness in light of all circumstances of the particular case, including possibility of specific prejudice to defendant resulting from any delay).

Hall testified at the final revocation hearing that she brought the defendant before a judge of the Superior Court in Norfolk County on June 28, 1984, four days after the defendant's probation was scheduled to expire and approximately one month after his conviction in Essex County. Hall further stated that the judge continued the matter until September 12, 1984, but that on that date the defendant's counsel was unavailable, and the case was postponed until November. She did not explain the circumstances surrounding further postponement of the hearing until December 13. The defendant points to no fact of record to indicate either that the Commonwealth failed to act

diligently, or that he was prejudiced thereby. See *Sawicki, supra* at 387. Nor does the record reveal that the defendant raised the issue of unreasonable delay before the Superior Court judge. Thus, this case is not in the same posture as that with which the Appeals Court was confronted in *Commonwealth* v. *Ward, supra.*

Accordingly, we affirm the judge's order revoking the defendant's probation and imposing a sentence of incarceration.

*So ordered.*