## COMMONWEALTH *vs.* KEVIN JUZBA.

No. 97-P-0850.

Franklin. January 6, 1998. - March 19, 1998.

Present: PORADA, KAPLAN, & BECK, JJ.

*Practice, Criminal,* Revocation of probation, Sentence. *Indecent Assault and Battery.*

At the probation revocation hearing of a defendant upon whom two sentences had been imposed, the first a committed sentence with a portion thereof suspended with probation and the second a sentence of straight probation, a review of the sentencing record as a whole demonstrated that the sentencing judge had intended that both probationary periods take effect concurrently upon the defendant's release from commitment; accordingly, where the defendant committed new offenses before the end of the probationary periods, the hearing judge correctly revoked the defendant's probation and imposed not only a committed sentence but also, from and after, the balance of the original suspended sentence. [459-461]

The record of a probation revocation hearing demonstrated that the hearing judge did not apply a standard of proof lower than a preponderance of the evidence in finding a violation of probation. [461-462]

INDICTMENT found and returned in the Superior Court Department on December 14, 1990.

A proceeding for revocation of probation was heard by *Francis X. Spina*, J.

*Richard J. Fallon* for the defendant.

*Dianne M. Dillon*, Assistant District Attorney, for the Commonwealth.

KAPLAN, J. The defendant, Kevin Juzba, was tried by jury and convicted in Superior Court, Franklin County, under an indictment in two counts charging, respectively, rape and assault and battery. As will appear, each sentence included a probationary period. The defendant was later accused of violating probation by reason of his commission of further similar crimes.

At an evidentiary hearing on the alleged violation, the

defendant contended that the probationary period, particularly that in the sentence for the assault and battery, had elapsed when the supposed violation occurred. He argues further on appeal that the judge applied an improper standard in finding that the defendant had in fact committed the violation. We find the defendant's contentions are without merit and affirm the order revoking probation and imposing sentence.

1. *Question of probationary period.* On January 30, 1992, at the conclusion of jury trial on the counts of the indictment, the judge pronounced sentences which were recorded on the reverse side of the bill of indictment as follows:

> "Sent. as follows: Ct. I [rape]: 5-7 yrs MCI Ced. Jct., 18 mos. to serve and bal. susp. w/3 yrs prob. Ct. II [assault and battery]: 3 yrs. prob. Spec. Cond. of prob.: 1. Psychiatric or psychological treat. as determined by prob., 2. substance abuse treat. as directed by prob., [and victim witness, legal counsel, and probation fees]."

And the sentences were recorded on the docket sheet thus:

> "Defendant sentenced as follows: Count I: 5-7 years MCI Cedar Junction, 18 months to be served and the balance suspended for 3 years with probation with a Judicial recommendation that the sentence be served at Hampden County House of Correction; Count II: 3 years probation concurrent with Count I [and a list of the 'special conditions of probation']."

On the day of sentencing the defendant signed a "probation conditions" document informing him that he was placed on probation for three years and was to "report upon release" to the Franklin County Superior Court probation department.

The defendant was released on June 7, 1993, from the Middlesex house of correction after accomplishing the eighteen months of prescribed incarceration for the rape. In 1995 his probation supervision was transferred from Franklin to Hampden County. On March 8, 1996, a State trooper arrested the defendant and he was later charged with rape and indecent assault and battery on a person over the age of fourteen. These new charges were reported to the Hampden supervising probation department; a chief probation officer after preliminary hearing found probable cause to "violate" the defendant's proba-

tion[1]; and an evidentiary hearing on the revocation of probation was scheduled in Superior Court. See G. L. c. 279, § 3.

Set for April 3, 1996, the hearing was then continued to April 24, 1996, at the prosecutor's request, to enable her to obtain the transcript of the sentencing proceeding of January 30, 1992. On April 24 the judge gave the prosecutor an additional day to produce, failing which the hearing went forward on the basis of the written notations quoted above, without benefit of any discussion at the time of sentencing. The hearing judge saw no need for the transcript where, as he thought, the notations were clear enough.[2]

Count 1: There is no problem here of the meaning of the notations of sentence or of the propriety of the sentence. On a (first) conviction of rape, a defendant "shall be punished by imprisonment in the state prison for not more than twenty years." G. L. c. 265, § 22(*b*), as amended through St. 1980, c. 459, § 6. The judge gave a "split sentence" pursuant to G. L. c. 279, § 1, as amended through St. 1975, c. 347: "When a person convicted before a court is sentenced to imprisonment, the court may direct that the execution of the sentence, or any part thereof, be suspended and that he be placed on probation for such time and on such terms and conditions as it shall fix." A judge is not barred from placing a defendant on probation during the period of his incarceration.[3] Here, however, the notations are themselves quite clear that the trial judge had no such exotic idea and was doing the conventional thing, so that probation fell in upon the defendant's release, with the balance of his

---

[1]As to this preliminary procedure, see *Commonwealth* v. *Ward*, 15 Mass. App. Ct. 388, 389 (1983), citing *Gagnon* v. *Scarpelli*, 411 U.S. 778, 781-782, 786 (1973).

The defendant did not provide the $75,000 bail upon the new criminal charges and accordingly was incarcerated. It is not clear from the record whether the Commonwealth has proceeded upon these charges.

[2]Evidently hoping against hope that the transcript might help him, the defendant asked the judge to withhold ruling until the transcript could be furnished, but the judge was not of that mind. On the present appeal it is the Commonwealth that proffers the transcript and moves that the record be extended to contain it. The defendant opposes, although he does not question the accuracy of the transcript. We deny the motion, preferring to resolve the issues on the record as it appeared to the judge at the probation revocation hearing. See *Commonwealth* v. *Smith*, 38 Mass. App. Ct. 324, 327 (1995).

[3]The Commonwealth states that, although not proscribed, this arrangement is uncommon and is typically reserved for cases where it can be foreseen that the person will cause trouble while jailed, e.g., as a member of a prison gang.

five to seven year sentence hanging over his head ("bal. susp. w/3 yrs prob."; "balance suspended for 3 years with probation").[4] His new offenses were within the three years, and the hearing judge correctly imposed the balance of his rape sentence. See *Commonwealth* v. *Holmgren*, 421 Mass. 224, 228 (1995), stating that, "[w]hether it is a desirable rule or not, when probation is revoked, the original suspended sentence must be imposed," and noting that the Federal practice is otherwise.

Count 2: Under G. L. c. 265, § 13A, a person convicted of assault and battery "shall be punished by imprisonment for not more than two and one half years in a house of correction or by a fine of not more than five hundred dollars." The trial judge gave the defendant "straight probation" pursuant to G. L. c. 276, § 87, as amended by St. 1974, c. 614: "The superior court . . . may place on probation in the care of its probation officer any person before it charged with an offense or a crime for such time and upon such conditions as it deems proper, . . . in any case after a finding or verdict of guilty."[5]

The defendant, observing that the notations say "3 yrs prob." and again "3 years probation concurrent with Count 1" without express reference to release from imprisonment, tries to invoke the proposition of *Royce, petitioner*, 28 Mass. App. Ct. 397, 402 (1990), that when sentences on multiple convictions are "not expressly ordered to be served consecutively, they are ordinarily regarded as concurrent." See *Henschel* v. *Commissioner of Correction*, 368 Mass. 130, 133 (1975). This could suggest that the probation on count 2 should be considered to begin to run from the date of sentencing. But the *Royce* proposition by its terms yields to the trial judge's purpose or design in fashioning a sentence, as evidenced by its expression and context. The notations for count 2 are indeed laconic, but the implication that release from jail sets off probation on count 2 is there when we review, as we should, the entire sentencing scheme. See *Delisle* v. *Commonwealth*, 416 Mass. 359, 361 (1993); *Wolcott,*

---

[4]The hearing judge remarked it was common knowledge, where a defendant is ordered to serve "a split . . . sentence that refers to direct time and probationary period, the probationary period is understood to commence upon the person's release from the direct time portion of the sentence."

[5]Hence the sentencing judge could place the defendant on probation for a period, here three years, longer than the permissible period of imprisonment for the basic offense, here two and one-half years.

*petitioner*, 32 Mass. App. Ct. 473, 479 (1992). The probation period for count 2 was the same as that prescribed for count 1, and the docket sheet's phrase "concurrent with count 1" is more suggestive of a concurrency of the probation periods on both counts than it is of a concurrency of the probation period on count 2 and the period of imprisonment on count 1. General Laws c. 276, § 87, governing probation, allows the sentencing judge much leeway in ordering the length and conditions of the probationary period and surely did not impose limits on the judge's authority in this case of "straight probation" to fix the start of the period at the release point of another sentence of the same defendant. As already indicated, it is a strain to imagine that the defendant was intended to be on probation while he was imprisoned, and the defendant was made aware of his true situation when he signed a "probation conditions" sheet to "Report upon release to this office." Thus the defendant was on probation on count 2 in March, 1996.

The judge, finding violation, was free to and did adjudge that the defendant should serve two and one-half years in the house of correction in respect to count 2 and, from and after, should serve the balance of his State prison sentence on count 1.

2. *Standard of proof of violation.* There was testimony by the defendant's probation officer, the State trooper, and the victim "Shelley," all subject to cross-examination by the defendant's counsel. Shelley said she slept over on March 7, 1996, at the house in Brimfield where the defendant rented a room. The landlord told Shelley to sleep in the defendant's room; apparently the landlord thought the defendant would not return that night. Shelley disliked the defendant and so barricaded the door that she would be alerted if he tried to enter. Around 5:00 A.M. he entered and claimed the bed. He pulled Shelley to the floor and sat on her and choked her until she blacked out. When she came to she was naked and the defendant was on top of her; she felt his penis near her vagina but could not say surely whether he had penetrated her. He was biting her. He choked her to the point of unconsciousness. When she revived she felt a wetness between her legs.

Shelley threw on some clothes and went to Wing Memorial Hospital and reported she had been raped. An examining physician observed bite marks on her rib cage and back and a slight tear and some blood within her vagina. The trooper, called to the hospital, interviewed Shelley, then spoke to and arrested the

defendant. The defendant claimed the encounter with Shelley had been consensual.[6]

At the close of the hearing, the judge said, "[T]here is probable cause to believe that [the defendant] committed the crime at least of indecent assault and battery." "[C]onvincing" of the commission of this offense was the evidence "that his chest was pressed up against hers, that his penis had come in contact with her vaginal area. But I think even more basic than that he had removed her underclothing, and that in and of itself I find to be an indecent assault and battery." The judge concluded: "[T]he Commonwealth has sustained its burden of proof not only to the aggravated nature of the assault and battery, but that it was also against the will and without the consent of the victim. I think that the question of his having committed an assault and battery has been established."[7]

The defendant on appeal fastens on the judge's words "probable cause" and argues that the judge used that improper standard of proof in finding the violation — as stated in *Commonwealth* v. *Holmgren*, 421 Mass. at 227, when a revocation is sought because of a probationer's commission of a crime, the Commonwealth must prove by a "preponderance of the evidence" that the probationer was in breach of his probation "contract." Although the judge did not use the language of preponderance, he made it clear that the evidence, which he found "convincing," "established" at a minimum that the defendant committed an indecent assault and battery. The judge did not apply a standard of proof lower than a preponderance and rightly revoked the defendant's probation.

*Order revoking probation and
imposing sentence affirmed.*

---

[6]The defendant did not testify at the revocation hearing. No evidence was presented that the encounter in the morning hours of March 8 was consensual.

[7]The judge said "[t]he question of rape" was more difficult but he needed only to find that the defendant "committed a violation of probation by virtue of an indecent assault and battery."